BUGGS *v.* STATE.

May 12, 1952.

No. 38426 (58 So. (2d) 791)

**Jesse L. Yancy, Jr.,** for appellant.

**Geo. H. Ethridge,** Assistant Attorney General, for appellee.

**Kyle, J.**

The appellant was indicted, tried and convicted in the Circuit Court of Quitman County on a charge of assault and battery with intent to kill and murder, and was sentenced to serve a term of six months in the county jail. From that judgment he prosecutes this appeal.

Omphie Lee Nelson, the victim of the assault, testified that he operated a cafe at Vance; that the appellant, whose nickname was "Lightning", came into the cafe on the night of Saturday, June 23, 1951, and that he asked

the appellant to pay him for two quarts of beer, which the appellant had purchased from him a few days before on credit; that an argument ensued between them; that the appellant seized two beer mugs and advanced upon him in a threatening manner, and that he picked up a bottle and started to meet him; that the appellant then ran out of the cafe. Omphie Lee stated that he remained in the cafe about ten minutes; that he then walked out of the front door, and was standing in front of the cafe with his arms folded, talking to someone on the inside, when the appellant shot him in the leg with a .22 rifle. Omphie Lee denied that he had a pocket knife in his hand when the appellant left the cafe or that he tried to cut the appellant with a knife; and he denied that he had a gun of any kind, or fired any shots after the appellant left the cafe.

Omphie Lee's version of the matter was corroborated by the testimony of Mary Sharp who worked in the cafe. Mary Sharp also testified that she saw and recognized Lightning across the highway after he left the cafe, and that the shots came from the east side of the highway by the station house. Two or three other witnesses testified for the State concerning that part of the difficulty which took place inside of the cafe.

The appellant testified that he was preparing to go frog hunting on the night of the difficulty; that he went by Omphie Lee's cafe to get a bottle of beer and to get his brother to go with him frog hunting. When he entered the cafe Omphie Lee asked him about a dollar that he owed him. An argument ensued about the dollar, and Omphie Lee "reached after my head with a knife." The appellant left the cafe, and Omphie Lee came out of the cafe behind him. The appellant stated that he had left his rifle and flashlight under a nearby tree when he entered the cafe; after he came out of the cafe, with Omphie Lee pursuing him, he got his rifle and shot back at Omphie Lee "to try to make him go back"; that Omphie Lee then fired a shot; and that the appellant got behind a tree and fired a second shot with his rifle, and Omphie

Lee fired another shot. The appellant stated that the rifle that he had with him was a .22 rifle, which he had brought along to go frog hunting with. The appellant testified that he was an expert marksman with a rifle and that when he shot at Omphie Lee the first time he did not intend to kill him, that he was ''just trying to turn him around''; that he could have shot him as easily in the head as in the leg; and that he did not know that Omphie Lee had been shot until the following Monday. The appellant testified that he could see Omphie Lee's pistol under the light at the entrance to the cafe, but that after Omphie Lee got in the shade of the trees he could not see his pistol.

The appellant's version of the shooting was corroborated by the testimony of two or three other witnesses, who testified that they heard four shots, two light shots and two big shots. The light shots sounded like rifle shots and the other two sounded like pistol shots. Two witnesses for the defendant testified that Omphie Lee advanced upon the appellant with a pocket knife while he and the appellant were engaged in an argument inside of the cafe. Appellant's brother testified that he saw Omphie Lee's pistol, when Omphie Lee took the pistol out of his pocket and walked out of the cafe, and that he saw Omphie Lee give the pistol to ''Rabbit'' after a police officer had been summoned.

The appellant's attorney argues on this appeal that the court erred in refusing to grant the peremptory instruction requested by the defendant, and in refusing to grant an instruction requested by the defendant that the jury could not find the defendant guilty of assault and battery with intent to kill.

Neither of these contentions can be sustained in view of the testimony of the witnesses. The appellant admitted that he fired the first shot and that at the time he fired the shot he was standing at a considerable distance from the front door of the cafe. The question whether the appellant fired the shot at Omphie Lee ''to make him go back'',

or with the intent to kill, was a question for the jury to decide. Blakely v. State, 165 Miss. 503, 144 So. 864.

There was a sharp conflict between the testimony of the State's witnesses and the testimony of the defendant and his witnesses. The question whether the defendant was guilty of the charge alleged in the indictment was a question for the jury to decide. The members of the jury heard the testimony of the witnesses and observed their conduct while they were on the witness stand, and by their verdict they have said that they believed that the defendant was guilty. ■■ The fact that the jurors saw fit to recommend the mercy of the court shows that they were not influenced in any way by prejudice in arriving at their verdict. There is sufficient evidence to support the verdict of the jury, and this Court cannot set the verdict aside, if no other errors appear in the record. Phillips v. State, Miss., 43 So.(2d) 208; Garvin v. State, 207 Miss. 751, 43 So.(2d) 209; Clanton v. State, Miss., 49 So. (2d) 267.

The judgment of the lower court is therefore affirmed. Affirmed.

**McGehee, C. J.**, and **Alexander, Lee** and **Ethridge, JJ.**, concur.